F. W. BERK & CO., INC. *v.* UNITED STATES

**No. 6282.**—Invoice dated Manchester, England, August 1943.
Certified September 1943.
Entered at New York, N. Y., September 24, 1943.
Entry No. 709096.

(Decided June 3, 1946)

*Eugene R. Pickrell (Eugene R. Pickrell and Eugene A. Chase* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

COLE, Judge: This appeal for reappraisement concerns the dutiable value of crude ammonium sulphocyanide imported from Manchester, England, and entered at the port of New York. The merchandise was entered at 4 pence per pound, net, packed, and it was appraised at 6 pence per pound, net, packed.

It is conceded by the parties that entry and appraisal were made on the basis of cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (f)), and that the only item in dispute is the profit ordinarily added by the foreign exporter, who is the sole manufacturer in the country of exportation of crude ammonium sulphocyanide, like or similar to that covered by the shipment in question.

The limited issue, resulting ·from counsel's agreement, makes it unnecessary to consider statutory foreign value, export value, or United States value, the discussion herein being confined to cost of production, section 402 (f), *supra,* defined as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In an affidavit (plaintiff's exhibit 4), executed by the production director of the English manufacturer, the witness has set forth, based

upon cost records kept in the ordinary business of his company, the cost of producing the instant merchandise, and in doing so has followed very closely the language of the statute, as follows:

(a) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing   *   *   *   was 2.235 pence per pound.
(b) That the usual general expenses   *   *   *   amounted to 0.625 pence per pound.
(c) That the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses, incidental to placing the CRUDE AMMONIUM SULPHOCYANIDE covered by Consular Invoice No. 1888, in condition packed ready for shipment to the United States, was 0.885 pence per pound.

The total of the above-enumerated items is 3.745 pence, which is not disputed in the American consul's report (defendant's exhibit 5).

Defendant contends that "material error" exists in the "cost for all containers," paragraph (c) of the affidavit, hereinabove quoted, the allegation being based on the invoice item "Packing," which is higher than the 0.885 pence per pound stated in said paragraph (c) of the affidavit. *Lionel Trading Co., Inc.* v. *United States*, 21 C. C. P. A. 362, T. D. 46889, disposed of the question by holding in effect that a broad invoice description is not comparable with, or to be accepted as representative of, the requirements of section 402 (f) (3), detailing the specific packing costs entering into statutory cost of production. Defendant's contention is contrary to this decision.

For proper determination of profit, section 402 (f) (4), *supra*, both counsel have cited *J. H. Cottman & Co.* v. *United States*, 20 C. C. P. A. 344, T. D. 46114, the pertinent part of which says:

There being no other producer of rock phosphate in the French protectorate of Morocco than the Office Cherifien des Phosphates, then it would seem logically to follow that the allowance to be made for profit would be the profit ordinarily added by the Office Cherifien des Phosphates in selling its product. In 1927, according to collective Exhibit 10, the sales were 1,198,006 tons, of which 70,000 tons were sold outside of Europe, 14,608 tons in Morocco, and the remainder in Europe. We think it may therefore be properly stated that the sales to European countries should be taken as the measure of the "profit which is ordinarily added."

Uncontradicted proof herein shows that the English manufacturer's sales for consumption in the foreign market amounted to 7,176 pounds (plaintiff's exhibit 4 and defendant's exhibit 5), and its sales for export to the United States totaled 201,469 pounds (plaintiff's collective exhibit 3). Following the *Cottman* case, *supra*, I find that sales for export to the United States "should be taken as the measure of the 'profit which is ordinarily added'."

A list of such sales forming the basis for plaintiff's computation of profit, for the purposes of this case, is set forth in the following tabulation (plaintiff's collective exhibit 3):

| Entry No. | Date of exportation | Date of entry | Quantity pounds | Value incl. pkg. | Value per lb. incl. pkg. |
|---|---|---|---|---|---|
| 701759 | June 23, 1942 | July 22, 1942 | 12, 077 | $803.78 | $0.06655 |
| 708523 | Sept. 16, 1942 | Oct. 5, 1942 | 9, 443 | 630.31 | .06674 |
| 710976 | Oct. 3, 1942 | Oct. 31, 1942 | 10, 321 | 692.04 | .05705 |
| 716826 | Dec. 1942 | Jan. 7, 1943 | 11, 235 | 738.83 | .06576 |
| 718214 | Dec. 1942 | Feb. 2, 1943 | 10, 011 | 657.74 | .06570 |
| 725294 | Mar. 17, 1943 | Apr. 22, 1943 | 11, 044 | 722.13 | .06538 |
| 726426 | Apr. 2, 1943 | May 1, 1943 | 11, 317 | 749.32 | .06621 |
| 728315 | Apr. 17, 1943 | May 20, 1943 | 8, 204 | 541.60 | .06601 |
| 700410 | June 8, 1943 | July 2, 1943 | 11, 330 | 749.17 | .06612 |
| 704462 | July 22, 1943 | Aug. 10, 1943 | 11, 010 | 726.00 | .06594 |
| 707632 | Aug. 14, 1943 | Sept. 6, 1943 | 10, 538 | 694.20 | .06587 |
| 709096 | Aug. 30, 1943 | Sept. 18, 1943 | 10, 721 | 706.78 | .06592 |
| 713117 | Oct. 6, 1943 | Oct. 26, 1943 | 15, 748 | 1, 064.25 | .06758 |
| 734594 | Apr. 20, 1944 | May 11, 1944 | 11, 994 | 854.32 | .07122 |
| 712683 | Oct. 12, 1944 | Nov. 18, 1944 | 46, 476 | 3, 272.20 | .07040 |

The shipment in question was exported in August 1943 and entered in September 1943. Government counsel, in their brief, urge "that the court should not consider sales made one year prior and more than one year subsequent to the date of exportation of the involved merchandise, in order to determine the cost of production of the importation at bar," and argue further that "Exhibit 3 has no probative value, as it includes shipments made after the date of exportation of the involved merchandise, and they should not be considered."

The statute, section 402 (f), *supra*, makes no mention of a period of time to be used in ascertaining profit; it provides that an amount "equal to the profit which ordinarily is added" shall be included in statutory cost of production. The proposition advanced by defendant might warrant consideration in a highly fluctuating market, but where, as shown by the above tabulation, the market remains fairly stable over a long period of time, then, a greater volume of transactions, like that presented here, more accurately reflects profit which ordinarily is added.

The computation of profit, section 402 (f) (4), *supra*, accepted for the purposes of this case, is clearly set forth in plaintiff's brief as follows:

* * * In accordance with Plaintiff's Exhibit No. 3, the exporter and shipper received $13,602.67 for its exportations of 201,469 pounds of crude ammonium sulphocyanide to the United States during 1942, 1943, and 1944, which is equal to a unit price of $.06752 per pound. Converting this into pence at a rate of exchange for the pound sterling of $4.035, it is equal to 4.02 pence per pound. Subtracting from 4.02 pence per pound the sum of the cost of materials and fabrication, general expenses and containers amounting to 3.745 pence per pound, we have 0.275 pence per pound. This difference or profit is 9.6 per centum of the cost of materials and fabrication and general expenses as testified to by Mr. James Clayton in Plaintiff's Exhibit No. 4. This is in excess of the minimum provision of 8 per centum for profit in paragraph (f) (4) of section 402 of the Tariff Act of 1930.

On the basis of the record before me, I find cost of production, section 402 (f), *supra*, to be the proper basis for appraisement of the instant merchandise, and that such statutory value is 4.02 pence per pound, net, packed.

Judgment will be rendered accordingly.